El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
Mediante esta petición de mandamus, en jurisdicción original, comparecen ante nos el Gobernador del Estado Libre Asociado de Puerto Rico (Gobernador), Hon. Aníbal Acevedo Vilá, y el Senador por el Distrito de Humacao, Hon. José Luis Dalmau Santiago. Nos solicitan que ordenemos al Presidente de la Cámara de Representantes, Hon. José F. Aponte Hernández, y al Secretario de dicho cuerpo legislativo, Ledo. José E. Meléndez Ortiz, a que sometan a la consideración del Primer Ejecutivo el Proyecto Sustitutivo al P. de la C. 2193, el cual contiene el texto de la Ley de Justicia Contributiva de 2006, según fue aprobada por la Asamblea Legislativa, para que éste pueda ejercer su derecho constitucional de aprobar o vetar la referida pieza legislativa.
En vista de que la Sec. 19 del Art. Ill de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, claramente dispone que un proyecto de ley que es aprobado por ambas cámaras se someterá al Gobernador, se expide el auto de mandamus. Por ende, se ordena a los demandados que cumplan con su deber ministerial constitucional de someter el citado proyecto de ley a la atención del Gobernador.
I
Los hechos que suscitaron este pleito no están en controversia. El 21 de junio de 2006, la Cámara de Representantes del Estado Libre Asociado de Puerto Rico (Cámara de Representantes) aprobó el Proyecto Sustitutivo al P. de la C. 2193 con treinta y un votos a favor y dieciocho *449 votos en contra. El aludido proyecto consignaba la versión de este cuerpo legislativo sobre la denominada Ley de la Justicia Contributiva de 2006.
Una vez dicho proyecto fue debidamente aprobado por la Cámara de Representantes el 21 de junio, pasó a la consideración del Senado de Puerto Rico (Senado). El 25 de junio de 2006, una mayoría de los miembros del Senado aprobó el proyecto sin realizarle enmienda alguna. Además, se dispuso que la medida fuera enrolada y entregada a la Oficina de Actas y Récord de la Cámara de Representantes. Posteriormente se desató un debate entre la Cámara de Representantes, el Senado y el Gobernador con relación al significado de ciertas disposiciones del proyecto aprobado. Como consecuencia de esto, el 27 de junio de 2006 la Cámara de Representantes convocó una sesión y aprobó el Sustitutivo al Proyecto Cameral 2193 de Reforma Contributiva. Mediante esta acción, el cuerpo reconsideró y enmendó ciertas disposiciones de la Ley de Justicia Contributiva de 2006 relacionadas con el monto de las tasas de impuesto al consumo. El 28 de junio de 2006, la Oficina de Actas y Récord de la Cámara de Representantes remitió al Senado una comunicación en la cual informaba la reconsideración de la medida, pero este último cuerpo no la recibió. Tampoco consintió a que se devolviera el proyecto a la Cámara de Representantes para su reconsideración.
Como el proyecto originalmente aprobado por ambos cuerpos no había sido remitido a su atención, el 28 de junio de 2006 el Gobernador cursó sendas misivas al Hon. José F. Aponte Hernández y al Ledo. José E. Meléndez Ortiz para requerirles que cumplieran con sus deberes ministeriales de certificar y someter la pieza legislativa a su consideración.
En vista de que ambos funcionarios no accedieron a lo solicitado, el Gobernador y el Hon. José Luis Dalmau Santiago acuden ante nosotros mediante este recurso de *450 mandamus.(1) Sostienen, esencialmente, que en atención a la referida Sec. 19 del Art. Ill de la Constitución del Estado Libre Asociado de Puerto Rico, una vez el proyecto de ley es debidamente aprobado tanto por la Cámara de Representantes como por el Senado, los presidentes de ambos cuerpos tienen un deber ministerial de someter la medida ante la consideración del Gobernador. Conforme a este fundamento, solicitan que le ordenemos al Hon. José F. Aponte Hernández y al licenciado Meléndez Ortiz a enrolar, firmar y certificar el proyecto de ley aprobado por la Asamblea Legislativa y a someterlo ante la consideración del Primer Ejecutivo para que lo apruebe mediante su firma o lo vete conforme a sus prerrogativas constitucionales.
La petición formulada fue acompañada por una Moción en Auxilio de Jurisdicción. En ésta nos solicitan que atendamos el recurso con carácter prioritario. Esto debido a que algunas disposiciones del proyecto de ley en controversia entrarían en vigor el 1 de julio de 2006, de ser aprobada por el Gobernador. Vista la petición, concedimos un término simultáneo e improrrogable al Presidente, al Secretario de la Cámara de Representantes y al Presidente del Senado para que expresaran sus posiciones en torno a este recurso.
En cumplimiento con lo ordenado, el Senado, por conducto de su Presidente, Hon. Kenneth McClintock Hernández, comparece ante nos allanándose al remedio solicitado por el Gobernador en su Petición de Mandamus. Señala, además, que está en la disposición de firmar y enviar al mandatario el Proyecto Sustitutivo del P. de la C. 2193 de Reforma Contributiva, una vez los funcionarios de la Cámara de Representantes cumplan con su deber ministerial de completar el trámite de enrolado y firmar el texto certificado, según aprobado por la Cámara de Representantes *451 en su Sesión Ordinaria de 21 de junio de 2006 y según aprobado, sin enmiendas, por el Senado de Puerto Rico en su Sesión Ordinaria de 25 de junio de 2006.
De igual forma, compareció ante nos el Presidente de la Cámara de Representantes, Hon. José F. Aponte Hernández. En esencia, sostiene que la petición de mandamus presentada por el Gobernador no cumple con los requisitos establecidos por este Tribunal para la expedición de este auto en jurisdicción original. Igualmente, aduce que los demandantes carecen de legitimación activa para impugnar la determinación de la Cámara de Representantes, que la controversia no está madura y que este pleito no es justiciable debido a que el Gobernador pretende socavar la voluntad y las prerrogativas de los miembros de la Cámara de Representantes sobre el gobierno interno del cuerpo y el trámite legislativo de las medidas.
Comparecen, además, el Banco Gubernamental de Fomento mediante una petición de autorización para comparecer como amicus curiae y siete miembros del Senado con una petición de mandamus y solicitud de intervención. La disposición del recurso mediante esta opinión hace innecesario expresarnos sobre esos escritos.
Con el beneficio de las comparecencias, y en consideración al alto interés público que ha suscitado esta controversia, procedemos a resolver la controversia de autos con la premura que este asunto amerita.
II
Al resolver este caso partimos de la premisa de que vivimos en un ordenamiento constitucional donde impera la ley y no las voluntades individuales. Los que tenemos el privilegio de servir a nuestro país hemos jurado ser fieles al mandato constitucional.(2) A este Tribunal le corres *452 ponde la ineludible obligación de asegurar la estabilidad constitucional del país y la seguridad jurídica de sus instituciones democráticas, particularmente en momentos en que los otros poderes constitucionales están en un conflicto que amenaza la estabilidad económica, y la salud fiscal y crediticia del país.
A. Como cuestión de umbral, pasemos a examinar si estamos ante una controversia susceptible de un remedio judicial, en vista del criterio de la justiciabilidad. Como hemos resuelto en el pasado, entre otros, un caso no es justiciable cuando las partes demandantes no poseen legitimación activa para incoar un recurso judicial determinado. Acevedo Vilá v. Meléndez Ortiz, 164 D.P.R. 875 (2005).
La legitimación activa nos asegura que el promovente de una acción posea un interés “ ‘de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia’ ”. Noriega v. Hernández Colón, 135 D.P.R. 406, 427 (1994). Véase Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 413 (1982). Para cumplir con dicho objetivo, el demandante debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre la acción que se ejecuta y el daño alegado, y (4) la causa de acción surge al amparo de la Constitución o de alguna ley. Acevedo Vilá v. Meléndez, supra; P.P.D. v. Gobernador I, 139 D.P.R. 643 (1995).
El Gobernador del Estado Libre Asociado de *453 Puerto Rico tiene legitimación activa para acudir al proceso judicial a vindicar sus prerrogativas constitucionales siempre que concurran los requisitos mencionados. Acevedo Vilá v. Meléndez, supra. De igual manera, igual exigencia se imprime cuando se trata de los cuerpos legislativos o cada uno de sus miembros. Hernández Agosto v. Romero Barceló, supra. Un legislador tendrá legitimación activa para cuestionar cualquier regla o proceso que coarte sus facultades constitucionales. Silva v. Hernández Agosto, 118 D.P.R. 45 (1986). También tendrá legitimación activa para impugnar la constitucionalidad de una ley o actuación gubernamental cuando se vea afectado directamente en su carácter personal. Noriega v. Gobernador, 122 D.P.R. 650 (1988). Claro está, el representante o senador no podrá acudir al tribunal para trasladar a éste su fallido debate legislativo. Hernández Torres v. Hernández Colón et al., 131 D.P.R. 593, 604 (1992). Es decir, si el legislador puede o pudo haber obtenido un remedio de sus compañeros mediante el proceso legislativo, los tribunales no intervendrán en el asunto. Véase L.H. Tribe, American Constitutional Law, 3ra ed., Nueva York, Ed. Foundation Press, 2000, Vol. 1, Sec. 3-20, pág. 463.
B. En el caso de autos, comparece el Hon. Aníbal Acevedo Vilá en su capacidad de Gobernador del Estado Libre Asociado de Puerto Rico. Sostiene que posee el derecho constitucional de sancionar o vetar los proyectos de ley tan pronto éstos se aprueban por ambos cuerpos de la Asamblea Legislativa. Alega, además, que ha sufrido un daño claro y palpable al impedírsele ejercer dicha prerrogativa constitucional, ya que el Presidente y el Secretario de la Cámara de Representantes no han sometido el proyecto a su consideración, aun cuando fue aprobado por la mayoría de los miembros de ambos cuerpos legislativos. Petición de mandamus, pág. 9.
*454 Evaluadas sus alegaciones de acuerdo con nuestra normativa constitucional y de los criterios específicos antes expuestos, entendemos que el Gobernador de Puerto Rico tiene legitimación activa para presentar este recurso.
En estas circunstancias no es necesario pronunciarnos sobre la legitimación activa del codemandante, Hon. José Luis Dalmau Santiago, ni de los otros Senadores que solicitan intervenir en este recurso.
Resuelto este criterio de umbral, pasemos a considerar si el recurso de mandamus es el adecuado para atender la controversia aquí presente.
III
A. El recurso de mandamus se expide para ordenar a una persona o personas naturales, a una corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. Art. 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 3421. Este recurso, por mandato expreso de ley, es altamente privilegiado y su expedición es discrecional. Noriega v. Hernández Colón, supra. Además, este Tribunal está facultado para expedirlo como parte de su jurisdicción original. Véanse: Art. V, Sec. 5, Const. E.L.A., L.P.R.A., Tomo 1; Art. 3.002(a) de la Ley de la Judicatura de 2003 (4 L.P.R.A. sec. 24s(a)); Art. 650 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 3422.
La procedencia del mandamus depende inexorablemente del carácter del acto que se pretende compeler mediante dicho recurso. D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Programa de Educación Jurídica Continua, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1996, pág. 107. El mandamus sólo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando *455 no hay otro mecanismo en ley para conseguir ese remedio. Báez Galib y otros v. C.E.E. II, 152 D.P.R. 382 (2000).
Un aspecto medular que debe ser evaluado para determinar si procede o no el mandamus contra los miembros de la Asamblea Legislativa es el carácter de la función que se pretende compeler. Ello en vista de que no procedería el auto para ordenar la ejecución de actividades legislativas legítimas, ya que éstas están protegidas por la inmunidad parlamentaria que surge de la Sec. 14 del Art. Ill de nuestra Constitución, L.P.R.A., Tomo 1. Romero Barceló v. Hernández Agosto, 115 D.P.R. 368 (1984). Hemos resuelto que las actividades legislativas legítimas comprenden, entre otros eventos, la formulación de las leyes, la investigación, la fiscalización del Gobierno, el debate de asuntos de interés público y mantener informado al pueblo sobre la marcha de la cosa pública. íd.
Ahora bien, ello no significa que toda actividad que se celebre o ejecute en la Asamblea Legislativa está cubierta por la inmunidad parlamentaria, por lo que debemos distinguir entre un acto legislativo y una acción no legislativa. Silva v. Hernández Agosto, supra. En vista de ello, al evaluar la actividad para fines de la inmunidad parlamentaria, “[l]o determinante [será] la naturaleza del acto y su relación con el proceso deliberativo y de votación inherente a las funciones parlamentarias”. Silva v. Hernández Agosto, supra, pág. 60. Examinemos este aspecto en otras jurisdicciones con el propósito de ilustrar nuestro razonamiento.
En Kavanaugh v. Chandler, 72 S.W.2d 1003 (1934), el más alto foro judicial de Kentucky se enfrentó a una situación muy similar a la de autos. Un ciudadano presentó una petición de mandamus para obligar al Presidente del Senado de ese estado a firmar unas medidas que fueron aprobadas por ambos cuerpos de la Asamblea Legislativa. Las medidas habían sido aprobadas siguiendo el trámite legislativo ordinario y, posteriormente, enroladas y firmadas *456 por el Presidente de la Cámara de Representantes. En ese momento, los proyectos de ley fueron enviados al Presidente del Senado, pero éste se negó a firmarlos por entender que la Cámara había incumplido con un requisito procesal posterior a la aprobación de las medidas. Ante la negativa del Presidente del Senado de firmar las leyes, éstas se dieron por aprobadas y se le enviaron al gobernador, quien también las firmó.
Al analizar la controversia planteada, dicho foro concluyó que el Presidente del Senado estaba obligado por mandato constitucional a firmar una ley una vez ésta fuera aprobada por ambos cuerpos legislativos. La Constitución de Kentucky obliga a los presidentes de los cuerpos legislativos a firmar las leyes una vez éstas sean debidamente aprobadas y se cumplan los trámites formales dispuestos. Por esta razón, el tribunal razonó que el acto de firmar una ley aprobada es una función ministerial que no involucra acto alguno de discreción legislativa.(3) Al tratarse de un deber ministerial, procedía la petición de mandamus para compeler al legislador a descargar su obligación.(4)
Del mismo modo, otros tribunales estatales han concurrido en el razonamiento de que cuando se trata de funciones de carácter imperativo por virtud de una ley o una Constitución, procede una petición de mandamus para ordenarle a un legislador que cumpla con su deber ministerial.
Por ejemplo, en State v. Osburn, 147 S.W.2d 1065 (1941), el Tribunal Supremo de Missouri tuvo ante su con *457 sideración una disposición de la Constitución de ese estado que le requiere al Presidente de la Cámara de Representantes certificar los resultados de una elección y ordenar su publicación oficial, una vez se contabilicen los votos. No obstante lo anterior, el Presidente de la Cámara de Representantes de Missouri se negó a certificar los resultados de una elección para el cargo de gobernador. En vista del mandato constitucional expreso, el Tribunal Supremo de Missouri declaró “con lugar” una petición de mandamus y le ordenó al Presidente de la Cámara de Representantes a anunciar el ganador y a publicar los resultados de la contienda electoral. Según razonó el tribunal, el acto de declarar al gobernador electo es acto un ministerial y no legislativo, independientemente de que quien lo lleve a cabo sea el Presidente de la Cámara de Representantes.(5)
■ Asimismo, en Pa. State Ass’n of County Com’rs v. Com., 681 A.2d 699 (1996), el Tribunal Supremo de Pennsylvania declaró “con lugar” una petición de mandamus y ordenó que la Rama Legislativa legislara, dentro de un término específico, para conjurar un esquema inconstitucional de financiamiento judicial. Según razonó el tribunal, cuando se le ha ordenado a la Legislatura a actuar para curar un defecto constitucional que afecta directamente la existencia de la Rama Judicial, la Legislatura no está inmune de ser demandada por razón de la inmunidad parlamentaria. Si así fuera, el deber de la Rama Judicial de interpretar la Constitución de Pennsylvania sería coartado y sería ineficaz el sistema de separación de poderes, que es el principio fundamental de la Constitución.(6)
*458 Igualmente, en Ex Parte Pickett, 24 Ala. 91 (1854), el Tribunal Supremo de Alabama le ordenó al Presidente de la Cámara de Representantes a certificarle al Contralor de ese estado la suma a la cual tenía derecho otro representante de la Cámara por concepto de dietas y millaje. La ley establecía el procedimiento mediante el cual se determinaría la compensación debida, por lo que el deber del Presidente de la Cámara era un trámite ministerial, no discrecional.
Del mismo modo, en State of Ohio, etc. v. Moffitt, 5 Oh. 359 (1832), el Tribunal Supremo de Ohio concluyó que pro-cede un mandamus para obligar a los presidentes de ambos cuerpos legislativos a certificar la elección de un juez, conforme establecen las leyes y la Constitución de ese estado.(7)
Según hemos expuesto, es un principio aceptado por las jurisdicciones estatales que aquellas funciones meramente ministeriales, que no involucran el ejercicio de discreción del legislador y que forman parte del aspecto mecánico del proceso legislativo, están sujetas al recurso de mandamus. Como nos señala un reconocido tratadista del proceso legislativo:
Cuando le sea requerido al presidente del cuerpo firmar un proyecto para autenticar su aprobación, el acto de firmar es simplemente ministerial y no un ejercicio de discreción legislativa; por tanto, el mandamus procederá para forzar su ejecución. Resolver lo contrario daría al presidente del cuerpo, de hecho, un poder de veto sobre los actos del cuerpo legislativo. (Traducción y énfasis nuestros.) Mason’s Manual *459 of Legislative Procedure, Minnesota, Ed. West Group, 2000, Sec. 575(3), pág. 417.(8)
B. En este caso, se somete ante nuestra consideración una controversia de gran envergadura para requerirle al Presidente de la Cámara de Representantes y al Secretario del referido cuerpo que ejecuten actos ministeriales para dar curso al ordenamiento constitucional que gobierna la aprobación de las leyes. Se nos solicita que ordenemos a estos funcionarios a enrolar el Sustitutivo al P. de la C. 2193, certificar la aprobación de esta medida por ambos cuerpos legislativos y someterla al escrutinio del Primer Ejecutivo. Esta controversia indudablemente impacta el interés público y nuestro sistema republicano de gobierno. De sus comparecencias ante nos, es evidente el conflicto entre los dos cuerpos legislativos sobre el asunto de autos y la controversia constitucional entre la Asamblea Legislativa y el Poder Ejecutivo. En vista de la importancia y magnitud de los planteamientos constitucionales respecto al proceso legislativo, y dada la imperiosa necesidad de mantener el ordenamiento constitucional que garantiza nuestro sistema republicano de gobierno, resolvemos que el mandamus es el recurso adecuado para examinar esta controversia. Procedemos, por lo tanto, a evaluar sus méritos.
IV
A. La Sec. 19 del Art. Ill de la Constitución del Estado Libre Asociado de Puerto Rico, supra, establece el procedimiento mediante el cual se aprueban las leyes en nuestro ordenamiento jurídico. Al así hacerlo, nuestra Asamblea Constituyente distribuyó entre la Rama Legisla *460 tiva y la Ejecutiva el poder de hacer las leyes. Dicha Sección dispone, en lo aquí pertinente, de la manera siguiente:
Cualquier proyecto de ley que sea aprobado por una mayoría del número total de los miembros que componen cada cámara se someterá al Gobernador y se convertirá en ley si éste lo firma o si no lo devuelve con sus objeciones a la cámara de origen dentro de diez días (exceptuando los domingos), contados a partir de la fecha en que lo hubiese recibido. (Énfasis suplido.) Art. Ill, Sec. 19, Const. E.L.A., supra, ed. 1999, pág. 399.
Este mandato constitucional también se relaciona con el que surge de la See. 4 del Art. IV, mediante el cual se faculta al Gobernador para sancionar u objetar los proyectos de ley aprobados por la Asamblea Legislativa. Const. E.L.A., supra.
La citada Sec. 19 del Art. Ill de nuestra Constitución formaba parte del procedimiento incorporado en la Carta Orgánica de 1917, la cual había probado su eficacia en la práctica. Véase 4 Diario de Sesiones de la Convención Constituyente 2585 (2003) (Informe de la Comisión de la Rama Legislativa). En ésta, asimismo, se requería que la aprobación de los proyectos de ley ocurriese por acción de una mayoría del número total de los miembros de cada cámara. J. Trías Monge, Historia Constitucional de Puerto Rico, Río Piedras, Ed. U.P.R., 1982, Vol. III, pág. 162. En lo aquí pertinente, la Carta Orgánica establecía:
Ningún proyecto de ley pasará a ser ley hasta que sea aprobado en cada Cámara en votación por lista por una mayoría de todos los miembros que la componen, y registrado en el libro de actas, y haya sido aprobado por el Gobernador dentro de los diez días siguientes. Acta Jones, Documentos Históricos, See. 34, L.P.R.A., Tomo 1, ed. 1999, pág. 103.
Una simple apreciación del referido texto nos señala la ausencia de la expresión imperativa de que el proyecto de ley “se someterá al Gobernador” para su aprobación, incluida en nuestra Constitución. Sin embargo, la referida expresión resultaba innecesaria ante el mandato que se *461 disponía más adelante en la misma See. 34 de la Carta Orgánica:
El Presidente de cada Cámara firmará, en presencia de la Cámara que presida, todos los proyectos de ley y resoluciones conjuntas aprobados por la Asamblea Legislativa, después que sus títulos hayan sido leídos públicamente, inmediatamente antes de firmar; y el hecho de firmar se hará constar en el acta. (Énfasis suplido.) Acta Jones, Documentos Históricos, supra, Sec. 34, pág. 105.
Como podemos observar, el ordenamiento legal vigente bajo la Ley Orgánica de 1917 disponía un mandato expreso sobre los presidentes de ambos cuerpos legislativos para firmar los proyectos de ley debidamente aprobados por la mayoría de los miembros de cada cámara legislativa antes de que el Gobernador los considerara como parte de sus facultades. Nuestra Constitución carece de un texto análogo al anterior.
No obstante, en el ejercicio interpretativo constitucional, debemos entender que este último mandato está incorporado a la antes citada Sec. 19 del Art. Ill de nuestra Constitución.
La razón para concluir de este modo nos parece obvia. La firma de un proyecto de ley por parte de los respectivos presidentes de los cuerpos legislativos es un mecanismo de autenticación de la medida aprobada, el cual se debe realizar antes de someter el proyecto de ley a la consideración del Gobernador. En vista de que nuestra Constitución ordena someter al Gobernador todos los proyectos de ley aprobados por ambos cuerpos legislativos, dicho mandato incluye, por implicación, que estos proyectos se preparen para su entrega. En fin, nuestra Constitución no necesitaba un precepto similar al incorporado en la Carta Orgánica de 1917, ya que la expresión imperativa “se someterá al Gobernador” —refiriéndose a todo proyecto de ley aprobado finalmente por una mayoría de ambos cuerpos— trae consigo la obligación de realizar aquellos actos *462 ministeriales que ordinariamente se llevan a cabo antes de trasladar las medidas ante la consideración del Primer Ejecutivo, como por ejemplo, que los presidentes del Senado y de la Cámara de Representantes las enrolen y firmen.(9)
No olvidemos que al interpretar los contornos de nuestra Constitución debemos garantizar su vigorosidad y relevancia frente a los problemas socioeconómicos y políticos de nuestro tiempo. Nogueras v. Hernández Colón, 127 D.P.R. 405 (1990); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987). Debemos, igualmente, “evitar que interpretaciones inflexibles y el apego a viejos modelos impidan su aplicabilidad a las eventualidades del futuro y en pocos años tornen obsoleta una constitución diseñada para guiar la vida de un pueblo por varios siglos”. Nogueras v. Hernández Colón, supra, pág. 411. A diferencia de las leyes, nuestra Constitución está redactada en términos amplios (jue establecen principios generales y no reglas específicas. Id., pág. 412. Nuestra Constitución prescribe las formalidades más importantes que debe seguir todo proyecto para convertirse en ley. N. Rigual, El poder legislativo de Puerto Rico, Río Piedras, Ed. U.P.R., 1961, pág. 91. De acuerdo con ello, debemos interpretar sus preceptos con vitalidad.
Conforme a lo señalado, y de acuerdo con lo establecido en la Sec. 19 del Art. Ill de nuestra Constitución, supra, un proyecto de ley que ha sido aprobado por la mayoría de los miembros de la Cámara de Representantes y del Senado, y que de esta manera se convirtió en una legislación de ambas cámaras, deberá someterse al Gobernador para que éste, a su vez, pueda aprobarlo o desapro *463 bario. Este mandato constitucional implica, a su vez, que el proyecto de ley debidamente aprobado por la mayoría de ambos cuerpos legislativos se prepare para entregárselo al Primer Ejecutivo, lo que conlleva ejercer todo trámite ministerial previo a este último acto.
En vista del lenguaje utilizado en dicha cláusula constitucional, una vez ambos cuerpos aprueban una ley, la Asamblea Legislativa no tiene la discreción de optar por no someter el proyecto al Primer Ejecutivo. Asimismo, enrolar y certificar la medida como pasos previos a su envío al Gobernador, no son actos discrecionales.
Como corolario de lo anterior, tanto la Cámara de Representantes como el Senado tienen un deber ministerial de someter al Gobernador todo proyecto de ley aprobado finalmente por éstos. Por ende, una cámara no tiene autoridad para retener un proyecto de ley luego de que éste ha sido debidamente aprobado. Resolver lo contrario equivaldría a “avalar una práctica mediante la cual una cámara o una o varias personas, como presidentes de la Legislatura, pudieran anular la votación inequívoca de los representantes del Pueblo”. (Traducción y énfasis nuestros.) Campaign for Fiscal Equity, Inc. v. Marino, 661 N.E.2d 1372, 1373 (1995).
Permitir que uno o ambos cuerpos de la Asamblea Legislativa retengan un proyecto de ley luego de su aprobación, resultaría en un limbo jurídico que socavaría el poder constitucional que se le confiere al Ejecutivo de aprobar o vetar las leyes. Véase King v. Cuomo, 613 N.E.2d 950 (1993). Como acertadamente señaló el Tribunal Supremo del estado de Nueva York al analizar una disposición constitucional casi idéntica a la que aquí examinamos,
[L]a práctica [de no someterle al Gobernador un proyecto de ley una vez ha sido aprobado por ambas cámaras,] mina tanto la integridad del proceso de aprobación de leyes como los principios [en los que se apoya la doctrina de separación de poderes]. Requerir que la Legislatura se adhiera a este man *464 dato constitucional no equivale ... a sobreponer la forma sobre la sustancia, sino a asegurarnos que la función de aprobación de las leyes se mantenga confiable, consistente y expuesta al escrutinio del público. (Traducción nuestra.) King v. Cuomo, supra, pág. 954.
En fin, creemos que la Asamblea Legislativa no tiene la discreción para elegir si le presenta o no un proyecto de ley al Gobernador, una vez dicho proyecto lo aprueba, finalmente, tanto la Cámara de Representantes como el Senado. Esto en atención a que, mediante la See. 19 del Art. Ill de nuestra Constitución, supra, se le impone un deber ministerial a dicho organismo de someter al Primer Ejecutivo todo proyecto de ley debidamente aprobado por ambas cámaras.
Esto, además de ser la norma imperante en nuestra jurisdicción, es cónsono con el entendido general que se tiene acerca de este asunto en otras jurisdicciones. A esos efectos, en un conocido tratado se expresa que “el deber de firmar [un proyecto de ley aprobado por ambos cuerpos legislativos] es ministerial y accionable judicialmente.” (Traducción y énfasis nuestros.) 1 Sutherland, Statutes and Statutory Construction Sec. 15.1, pág. 815 (2005). Por ende, “el oficial que presidefla cámara] no tiene discreción para rehusarse a [firmar el proyectó]”. (Traducción y énfasis nuestros.) íd.
B. Por otra parte, tomamos conocimiento judicial de que en Puerto Rico, tradicionalmente, cuando el Senado o la Cámara de Representantes origina y aprueba una medida, ésta se envía al otro cuerpo para su consideración. Luego de los trámites de rigor, el otro cuerpo puede realizar algún tipo de enmienda al proyecto y proceder con su aprobación. Si se realizara alguna enmienda, se devuelve el proyecto al cuerpo de origen para que éste decida si acepta las enmiendas efectuadas. Si este cuerpo no las acepta no existe un texto aprobado que, conforme lo dis-pone la citada Sec. 19 del Art. Ill de la Constitución, pueda *465 ser sometido al Gobernador, por lo cual se convoca al Comité de Conferencia.
En ese Comité, una delegación de legisladores, en representación de ambos cuerpos, analiza las dos versiones de la medida aprobada y recomienda al pleno una versión final del proyecto, la cual se somete a votación ante ambos cuerpos. De aprobarse esta última versión, se envía a la consideración del Gobernador. Todo proyecto de ley que es aprobado por ambos cuerpos se imprime en forma final enrolado, o sea, se eliminan los números al margen y los blancos entre líneas, y se le asigna el título de ley o resolución conjunta, según sea el caso. El Secretario del último cuerpo que aprobó el proyecto certifica ese acto. La medida, entonces, está lista para la firma de los presidentes de ambos cuerpos legislativos. Una vez firmada, la pieza se so-mete al Gobernador para su consideración. Véanse: Rigual, op. cit., págs. 91-110; Oficina de Servicios Legislativos, La Asamblea Legislativa y el proceso legislativo, 1997, págs. 41-45.
El aludido proceso depende, en gran medida, de la reglamentación que hayan aprobado ambos cuerpos para organizar el procedimiento legislativo. Esto en vista de que la See. 9 del Art. Ill de nuestra Constitución establece que “[c]ada Cámara ... adoptará las reglas propias de cuerpos legislativos para sus procedimientos y gobierno inter-no ...”. Const. E.L.A., supra, ed. 1999, pág. 371.
Como parte de esta facultad, ambos cuerpos pueden reglamentar el proceso de reconsideración de una medida legislativa. Véase Mason’s Manual of Legislative Procedure, op. cit., Sec. 450, págs. 299-301. Mientras cada cuerpo pueda reconsiderar la medida, según su propia reglamentación, no surge aún el deber ministerial de someter un proyecto de ley al Gobernador, según lo dispone la Sec. 19 del Art. Ill de la Constitución, supra. Ahora bien, debemos señalar que el poder inherente que tiene cada cámara para reconsiderar una acción deja de ser absoluto en *466 el momento en el que el asunto aprobado se envía a la consideración de otra cámara. Véase Rigual, op. cit, págs. 108-109. A este respecto se ha expresado que
[u]na medida no puede ser reconsiderada a menos que esté en posesión del cuerpo. En cuerpos legislativos bicamerales, una medida que haya sido enviada a la otra cámara tiene que ser devuelta antes de que una reconsideración pueda ser efectiva. (Traducción nuestra.) Mason’s Manual of Legislative Procedure, op. cit., Sec. 454(1), pág. 304. Véase L.S. Cushing, Elements of the Law and Practice of Legislative Assemblies, Boston, Little, Brown and Co., 1989, Sec. 1274, pág. 508.
Lo contrario fomentaría la intromisión indebida de una cámara con los procedimientos de su hermano foro legislativo. Por ello, hace casi cien años la Corte de Apelaciones del estado de West Virginia argumentó que
[u]n principio fundamental de [derecho parlamentario] es que un cuerpo legislativo debe tener posesión y control de una medida para poder reconsiderar el voto mediante el cual se aprobó. Si ya [la medida fue aprobada], y ya no está bajo el control y posesión de dicho cuerpo, no se puede reconsiderar; se ha perdido jurisdicción; el caso ya no está ante [el organismo]. Ni un cuerpo legislativo ni una corte pueden actuar sobre algo que no tienen ante sí. (Traducción y énfasis nuestros.) Smith v. Mitchell, 72 S.E. 755, 758 (1911).
Con esto coincide el historiador Néstor Rigual al explicar, en su libro sobre el poder legislativo de Puerto Rico, que
[s]i [la reconsideración] se formula después que el proyecto ha sido remitido o devuelto al otro Cuerpo, se requiere entonces que, junto con la solicitud de consentimiento para reconsiderar, se pida la devolución de la medida.
La devolución para reconsiderar, se hace si el proyecto ha sido ya aprobado por una de las cámaras y se encuentra ante la consideración de la otra. Pero, si hubiere sido aprobado por ambas Cámaras, y todavía no firmado por el Presidente del Cuerpo de origen, porque éste deseare reconsiderarlo, entonces aquél solicita el consentimiento del otro cuerpo para entrar en la reconsideración. Rigual, op. cit., pág. 108.
*467 Una vez un proyecto ha sido debidamente aprobado por una mayoría de los miembros que componen ambos cuerpos legislativos, “la medida pasa a ser cosa única de la Asamblea Legislativa [y] para que una cámara pueda entrar a la reconsideración de aquélla, tiene que solicitar el consentimiento de la otra”. Rigual, op. cit., pág. 109. No debemos olvidar que por mandato constitucional, el Poder Legislativo lo ejercen el Senado y la Cámara de Representantes conjuntamente. Art. Ill, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1.
De acuerdo con esta discusión, un cuerpo pierde autoridad para reconsiderar un proyecto de ley que pasó a la atención del otro por tratarse ya de una medida que, por así decirlo, pertenece a ambos cuerpos. Sin embargo, ello puede hacerse en las ocasiones en que el otro cuerpo consienta en devolver el proyecto al cuerpo de origen con el propósito de que sea reconsiderado o enmendado.
Con esta normativa en mente, pasemos a examinar los hechos que generaron el caso ante nos.
V
Los demandantes sostienen que, una vez una mayoría de los miembros que componen tanto la Cámara de Representantes como el Senado aprobaron el Proyecto Sustitutivo al P. de la C. 2193 de Reforma Contributiva el 21 y el 25 de junio de 2006, respectivamente, los presidentes de ambas cámaras tenían un deber ministerial de someter el proyecto ante la consideración del Primer Ejecutivo. Les asiste la razón.
Como hemos expresado, la Sec. 19 del Art. Ill de nuestra Constitución, supra, establece, mediante un lenguaje claro, imperativo e inequívoco, que un proyecto de ley debidamente aprobado por ambas cámaras debe ser sometido al Gobernador. En conformidad con lo anterior, la Asamblea Legislativa tiene el deber de presentarle el proyecto al *468 Primer Ejecutivo dentro de un término razonable después de su aprobación.
En el caso de autos, el 21 de junio de 2006 la Cámara de Representantes aprobó por mayoría de sus miembros el proyecto en controversia. Ese mismo día, el proyecto fue enviado a la consideración del Senado. El 25 de junio de 2006 el Senado, a su vez, aprobó sin enmiendas la referida medida legislativa. En ese momento el proyecto de la ley se convirtió en un proyecto de ambos cuerpos.
Sin embargo, el 27 de junio de 2006 la Cámara de Representantes convocó una nueva sesión y, mediante el mecanismo de reconsideración, aprobó una versión enmendada del Proyecto Sustitutivo al P. de la C. 2193. El próximo día, 28 de junio, la Oficina de Actas y Récord de la Cámara de Representantes intentó introducir al Senado una comunicación para informar la reconsideración de la medida. No obstante, el Secretario del Senado, por instrucciones del Presidente, no accedió a recibirla por considerarla improcedente. Posteriormente, una mayoría del Senado, en su sesión de 29 de junio de 2006, sostuvo la decisión del Presidente. Por ende, el Senado claramente no consintió en que se devolviera el proyecto a la Cámara de Representantes.
En vista de la denegatoria del Senado a reconsiderar la medida, el Proyecto Sustitutivo al P. de la C. 2193 de Reforma Contributiva fue aprobado finalmente por ambos cuerpos legislativos el 21 y 25 de junio. En este instante, se activó el mandato constitucional de la citada Sec. 19 del Art. Ill, al ser aprobado el referido proyecto de ley por la mayoría de los miembros que componen cada cámara sin la necesidad de mayor trámite legislativo. Es decir, únicamente resta realizar aquellos trámites ordinarios que no involucran discreción legislativa para preparar la medida y enviarla al Gobernador. En este momento surge el deber ministerial de someterle el proyecto según aprobado al Gobernador.
*469 VI
En vista de los fundamentos que anteceden, se expide el auto de mandamus y se le ordena al Presidente de la Cámara de Representantes, Hon. José F. Aponte Hernández, cumplir con su deber ministerial y certificar el proyecto Sustitutivo al P. de la C. 2193 de Reforma Contributiva, según aprobado por ambos cuerpos legislativos el 21 y 25 de junio de 2006, dentro del plazo de veinticuatro horas, contado a partir de la notificación de esta Opinión y Sentencia. Simultáneamente, y de manera subsidiaria, se ordena al Secretario de la Cámara de Representantes, Ledo. José E. Meléndez Ortiz, que realice en dicho plazo todas aquellas gestiones necesarias para someter el citado proyecto de ley a la consideración del Gobernador, Hon. Aníbal Acevedo Vilá.
Si dentro del mencionado plazo los referidos funcionarios de la Cámara de Representantes no le someten al Gobernador la pieza legislativa, para hacer viable la pronta resolución de la situación surgida, de acuerdo con lo dispuesto en la Regla 51.3(a) de Procedimiento Civil, 32 L.P.R.A. Ap. Ill,(10) y en vista de lo que informó el Presidente del Senado, Hon. Kenneth McClintock Hernández, a este Tribunal "de que tiene la total disposición de cumplir con su deber ministerial y de cumplir con el trámite requerido por la Constitución”, dicho funcionario deberá proceder a firmar el referido proyecto y remitirlo inmediatamente al Gobernador de Puerto Rico, Hon. Aníbal Acevedo Vilá, y así dar por cumplido el mandato de la citada Sec. 19 del Art. Ill de la Constitución.

*470
Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad y concurrente. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad.

 La petición de autos va dirigida igualmente contra el Senado y su Presidente, Hon. Kenneth McClintock Hernández, bajo el fundamento de que éstos son partes indispensables para la configuración del remedio solicitado. Véase Petición de mandamus, págs. 6-7.

 La Sec. 16 del Art. VI de nuestra Constitución dispone:
*452 “Todos los funcionarios y empleados del Estado Libre Asociado, sus agencias, instrumentalidades y subdivisiones políticas prestarán, antes de asumir las funciones de sus cargos, juramento de fidelidad a la Constitución de los Estados Unidos de América y a la Constitución y a las leyes del Estado Libre Asociado de Puerto Rico.” Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 419.

 “[SJince the Constitution peremptorily directs that the officer shall sign the bills under the conditions specified, he has no discretion and his act is ministerial in character. It is familiar law that the courts may mandatorily require a public officer to perform his duty.... We have so held in relation to the executive. ... And it is no usurpation of legislative powers or an invasion of the functions of that independent branch of the government for the court to compel its officers to perform a duty imposed by the law upon them where the element of discretion does not enter.” Kavanaugh v. Chandler, 72 S.W.2d 1003, 1005 (1934).

 Como cuestión de hecho, en este caso se declaró “sin lugar” la petición de mandamus por otros fundamentos que no están relacionados con la controversia del presente recurso.

 “It is our judgment that the duty commanded by [art. 5, Section 3] is imposed on the speaker and is clear, peremptory and ministerial and therefore one which may be directed by mandamus.” State v. Osburn, 147 S.W.2d 1065, 1069-1070 (1941).

 “[Wjhere the legislature has been directed by this court to act in order to remedy a constitutional defect in the scheme which funds the court system, funding of which is necessary for the continued existence of the judicial branch of government, the legislature is not insulated from suit by the speech and debate clause. If it were, this court’s duty to interpret and enforce the Pennsylvania Constitution would be abrogated, thus rendering ineffective the tripartite system of government which *458 lies at the basis of our constitution.” Pa. State Ass’n of County Com’rs v. Com,., 681 A.2d 699, 702 (1996).

 Según concluyó el Tribunal Supremo de Ohio: “ ‘[The] act to provide for commissioning certain officers’ (29 Ohio L. 409) contains this proviso, ‘That the election of all officers elected or appointed by the legislature shall be certified by the speakers of both houses.’ Should the two speakers refuse to sign such certificate ..., power is vested in this court to compel them to do it. By section 3 of the practice act, 29 Ohio L. 56, the Supreme Court is authorized to issue a mandamus in proper cases. And in case of such refusal, this would be undoubtedly a competent and proper remedy.’ ” State of Ohio, etc. v. Motiff, 5 Oh. 359, 362 (1832).

 “When a presiding officer is required to sign a bill to authenticate its passage, the act of signing is simply ministerial and not an exercise of legislative discretion; therefore, mandamus will lie to compel its performance. To hold otherwise would give the presiding officer, in effect, a veto upon the acts of the legislative body.”

 Véase, a modo ilustrativo, Field v. Clark, 143 U.S. 649, 671 (1892), donde el Tribunal Supremo de Estados Unidos expuso:
“A pesar de que la Constitución no requiere expresamente que los proyectos de ley aprobados por el Congreso contengan las firmas de los oficiales que presiden ambos cuerpos, el uso, la conducta ordenada del proceso legislativo y las normas bajo las cuales ambos cuerpos se han conducido desde la organización del gobierno requieren ese modo de autenticación.” (Traducción nuestra.)

 “(a) Si una sentencia ordenare a una parte transferir el dominio de terrenos y otorgar escrituras y otros documentos, o realizar cualquier otro acto específico, y dicha parte dejare de cumplir dicha orden dentro del término especificado, el tribunal podrá ordenar que el acto se realice por otra persona por él designada, a expensas de la parte que incumple y cuando se haya realizado, tendrá el mismo efecto que si hubiere sido efectuado por la parte .... El tribunal podrá, además, en casos apropiados, procesar a dicha parte por desacato.” (Énfasis suplido.)